ROBERT I. POWELL v. BOARD OF TRUSTEES OF TEACHERS' AND
STATE EMPLOYEES' RETIREMENT SYSTEM

No. 6810SC284

(Filed 13 November 1968)

1. Retirement Systems § 5— claim of deceased member's beneficiary
   to retirement allowance

   The death of plaintiff's wife prior to the effective date of her disability
   retirement under Teachers' and State Employees' Retirement System
   renders unenforceable her election of option two under G.S. 135-5(g)
   whereby upon her death the plaintiff, as her nominated beneficiary, would
   continue to receive her reduced retirement allowance for the remainder
   of his life; consequently, plaintiff is entitled only to a return of his wife's
   accumulated contributions to the retirement system in accordance with
   G.S. 135-5(f). G.S. 135-5(g).

2. Statutes § 5— rules of construction — legislative intent

   The intent and spirit of a statute are controlling in its construction,
   and its language should be construed contextually to ascertain the legis-
   lative intent.

3. Retirement Systems § 2— purpose of State retirement system

   In creating the Teachers' and State Employees' Retirement System, it
   was not the intention of the legislature to establish a group life insurance
   program; rather, its purpose was to provide benefits on retirement for
   the teachers in the public school system of the State and for State em-
   ployees.

APPEAL by plaintiff from Godwin, J., 10 June 1968 Session, WAKE,
Superior Court.

Ruth P. Powell, wife of plaintiff, died 21 August 1966, at the
age of 51 years. At the time of her death she had more than twenty
years service as a public school teacher in North Carolina, and
was a fully accredited member of the Teachers' and State Employees'
Retirement System. On 9 August 1966, her medical condition was
such that she was fully entitled to a "disability retirement" pro-
vided she complied with the applicable statutes.

On 9 August 1966, Ruth P. Powell filed with the Board of
Trustees of the Teachers' and State Employees' Retirement System
her "Application for Disability Retirement," requesting that her
retirement become effective 1 October 1966. In the application she
elected "Option two" under G.S. 135-5(g), nominating plaintiff as
beneficiary. Option two provided: "Upon his death his reduced re-
tirement allowance shall be continued throughout the life of and
paid to such person as he shall nominate by written designation duly
acknowledged and filed with the board of trustees at the time of his
retirement."

The Board of Trustees refused to pay plaintiff a reduced retirement allowance, but tendered to him a return of Mrs. Powell's contributions in accordance with G.S. 135-5(f).

Plaintiff instituted this action seeking a writ of *mandamus* to be issued directing the Board of Trustees to pay him the reduced retirement allowance under Option two as elected by his wife. The cause was heard by Godwin, J., and from judgment denying relief, plaintiff appealed, assigning as error the entry of the judgment.

*Warren and Fowler, by Miles B. Fowler, for plaintiff appellant.*

*T. W. Bruton, Attorney General, by Harry W. McGalliard, Deputy Attorney General, and Christine Y. Denson, Staff Attorney, for defendant appellees.*

BROCK, J.

[1]   It was stipulated that, at the time of filing her application, Ruth P. Powell's medical condition was such that she was fully entitled to disability retirement benefits under G.S. 135-5(c) provided she complied with the applicable statutes; therefore the question posed by the parties is whether her election of Option two under G.S. 135-5(g) was valid and enforceable in view of her death prior to 1 October 1966, her selected date of retirement.

On the date of filing her application for retirement G.S. 135-5(g) provided as follows:

"(g) Election of Optional Allowance. — With the provision that until the first payment on account of any benefit becomes normally due, or his first retirement check has been cashed, any member may elect to receive his benefits in a retirement allowance payable throughout life, or he may elect to receive the actuarial equivalent of such retirement allowance in a reduced allowance payable throughout life under the provisions set forth in Options one, two, three, or four below: Provided further, that an optional election may be made after attainment of age 60 without establishment of a date of retirement. Such election will be effective 30 days after execution and filing thereof with the Retirement System. The election of Option two or Option three or nomination of the person thereunder shall be revoked if such person nominated dies prior to the date the first payment becomes normally due or until the first retirement check has been cashed. Such election may be revoked by the member prior to the date the first payment becomes normally due or until his

first retirement check has been cashed. Any member dying in service after his optional election has become effective shall be presumed to have retired on the first day of the month following the date of death."

Option two under G.S. 135-5(g) read as follows:

"Option 2. Upon his death his reduced retirement allowance shall be continued throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the board of trustees at the time of his retirement."

[2] The intent of the legislature controls the interpretation of a statute. The intent and spirit of an act are controlling in its construction, and its language should be construed contextually to ascertain the legislative intent. 7 Strong, N. C. Index 2d, Statutes, § 5, p. 68.

[3] It should be noted at the outset that by legislative definition Article 1 of Chapter 135 (G.S. 135-1 through 135-18.5) creates the "Teachers' and State Employees' Retirement System of North Carolina" for the purpose of "providing retirement allowances and other benefits . . . for teachers and state employees . . ." G.S. 135-2. Nowhere do the statutes indicate a legislative intent to establish a group life insurance program. On the contrary, G.S. 135-5(f) provides in part specifically as follows: ". . . Upon receipt of proof satisfactory to the board of trustees *of the death, prior to retirement, of a member or former member* there shall be paid . . . the *amount of his accumulated contributions* at the time of his death." (Emphasis added.) " 'Retirement' shall mean the withdrawal from active service with a retirement allowance granted under the provisions of this chapter." G.S. 135-1(20). In *Bridges v. Charlotte*, 221 N.C. 472, 20 S.E. 2d 825, our Supreme Court held the purpose of the legislature was "to provide *benefits on retirement* for the teachers in the public school system of the State and for State employees. It is based not only upon the principle of justice to poorly paid State employees, but also upon the philosophy that a measure of *freedom from apprehension of old age and disability* will add to the immediate efficiency of those engaged in carrying on a work of first importance to society and the State." (Emphasis added.)

[1] It is clear from the stipulated facts that Ruth P. Powell had not retired on the date of her death; she had selected 1 October 1966 as the date for her retirement to become effective, and she died 21 August 1966. And it cannot be said that her selection of a date for retirement has created an unfortunate situation. Because, under the

disability retirement section by virtue of which she was eligible to elect to retire it is provided that she may not be retired less than thirty days after filing her application. G.S. 135-5(c). She filed her application on 9 August 1966 and she died twelve days thereafter on 21 August 1966.

Although Option two of G.S. 135-5(g) is a departure from a direct retirement benefit to the teacher or employee, it requires an agreement to accept, upon retirement, a reduced retirement allowance. And within the option itself can be seen the legislative intent that the member must first retire before the death benefit to the nominee can become effective. It provides that the reduced retirement allowance *shall be continued* to the nominee. G.S. 135-5(g), *supra.*

In addition to the clear provisions in case of death before retirement as contained in the above quoted portion of G.S. 135-5(f), and the generally expressed legislative intent to provide for *retirement benefits,* Ruth P. Powell, in her application for retirement acknowledged the necessity to survive until she was retired. The selection by her of Option two was as follows: "I elect to receive a reduced retirement allowance in accordance with Option 2, *which provides that upon my death after retirement,* the same reduced retirement allowance will be continued to the beneficiary designated below for the remainder of his (her) life." (Emphasis added.)

It is clear that Ruth P. Powell wished for plaintiff to have the benefit of the reduced retirement allowance in the event he outlived her, but the wishes of the deceased member cannot amend the clear provisions of the statutes. Nor can this Court amend the statutes to accommodate the wishes of the deceased member. It was necessary for the legislature to establish a point at which benefits would become due and payable; this they have established after retirement. We recognize that had Ruth P. Powell lived for only another month or so the plaintiff would be entitled to receive these payments for the rest of his life, but this cannot justify ignoring the statute. Nor do we think the provisions of the statute constitute a trap for the unwary as argued by the plaintiff. Ruth P. Powell did nothing to her detriment in undertaking to establish retirement under Option two; she would not have gained retirement status under any provision of the act. The attempted election by her has in no way devalued her estate; it is entitled to the same benefit of accumulated contributions as though no option had been elected. We

perceive no unfairness in the statute. If changes seem desirable, it is a matter for the legislature.

Affirmed.

BRITT and PARKER, JJ., concur.